**SECOND DIVISION**
**MILLER, P. J.,**
**BROWN and GOSS, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**September 26, 2018**

# In the Court of Appeals of Georgia

A18A1005. GLOVER v. GEORGIA POWER COMPANY.

MILLER, Presiding Judge.

This appeal stems from a tragic hit and run incident in which the driver of a tractor-trailer struck three pedestrians as they attempted to cross Georgia Highway 520 in the City of Dawson. The only surviving pedestrian, Adrianne Glover, sued Georgia Power, alleging that the company failed to maintain appropriate lighting in the area of the incident. The trial court granted summary judgment to Georgia Power, and Glover appeals.

Among other contentions, Glover argues that the trial court erred in ruling that Georgia Power had no duty to provide or maintain streetlights in the area of the incident, and in determining that the physical condition of the highway was not dangerous or abnormal at the time of the incident so as to engender such a duty. We

conclude that the trial court correctly granted summary judgment to Georgia Power because the company did not owe or voluntarily assume any duty to Glover that would subject it to liability in this case. Accordingly, we affirm.

> Summary judgment is appropriate when no genuine issue of material fact exists for consideration by a jury, entitling the movant to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.

(Citation and punctuation omitted.) *Roquemore v. City of Forsyth*, 274 Ga. App. 420 (617 SE2d 644) (2005).[1]

So viewed, the evidence shows that Highway 520 is part of the state highway system and was designed by the Georgia Department of Transportation ("DOT"). A portion of this highway is in the City of Dawson ("the City"). Around 1989, the DOT widened this portion of the highway, and Georgia Power applied for an encroachment

---

[1] Glover contends that the trial court's grant of summary judgment should be reversed for failure to review specific deposition transcripts. In our review of the grant or denial of summary judgment, however, this Court "considers de novo the entire record." (Citation omitted.) *Cambridge Mutual Fire Ins. Co. v. Okonkwo*, 218 Ga. App. 59, 61 (1) (460 SE2d 302) (1995). Thus, Glover's claim is not grounds for reversal.

2

permit from the DOT to erect additional light poles along the highway. The DOT approved the request, and Georgia Power installed the additional lighting in accordance with the permit. Georgia Power has a contract with the City whereby the City pays the monthly bill for the electricity used, and the City's police department monitors the streetlights. If a patrolling officer observes an outage to a streetlight, that outage is reported to the City, and then the City informs Georgia Power so that Georgia Power can address the problem.

On an evening in February 2013, Glover, Latasha Harvey, and Harvey's four-year-old daughter left Glover's residence on foot and began crossing from the west to the east side of Highway 520 to go to a convenience store. At that point in the highway, there are four traffic lanes and a turning lane in the center. Although the west side contains streetlights, the east side does not.

As the three pedestrians stood in the center turning lane, waiting for traffic to clear, a tractor-trailer struck them. Harvey and her daughter were killed as a result, and Glover sustained extensive injuries.

The driver of the tractor-trailer testified that the area in which the incident occurred was dark and that he did not see any of the pedestrians. His urine sample, which was taken the following evening, tested positive for cocaine, but the forensic

toxicologist could not determine whether he was impaired by cocaine at the time of the incident. The driver thereafter pleaded guilty to first-degree homicide by vehicle, hit and run, and serious injury by vehicle.

A Georgia State Patrol officer investigated the collision and found that a streetlight immediately south of where the pedestrians crossed the highway went "on and off at times." Prior to the incident, however, Georgia Power had not been informed of any malfunctioning streetlight or power outage at the scene. Further, when the officer inspected the roadway, he noted that its condition appeared normal, and that it contained no potholes or obstructions, nor was it undergoing any excavation work. The Georgia State Patrol Specialized Collision Reconstruction Team also investigated the incident. The lead officer in this team determined that the area was dark, but that the roadway did not appear to contribute to the incident.

Months later, this same lead officer performed another reconstruction of the incident, using a similar tractor-trailer and driving under similar conditions with regard to weather, speed, and direction. The lead officer thereafter testified that he did not believe that the driver had been able to see the pedestrians. The City requested that the DOT study the area, and the DOT concluded that the lighting "appear[ed] insufficient" during the nighttime.

4

Glover sued the City and Georgia Power to recover damages for her medical expenses and she alleged, inter alia, that both were negligent by failing to maintain appropriate lighting in the area of the incident.[2] Georgia Power moved for summary judgment, arguing that its contractual responsibility was to the City, not to Glover, that its only obligation was to repair streetlights when it received notification of an outage, and that it did not proximately cause Glover's injuries.

The trial court granted summary judgment to Georgia Power, ruling that the company had no public or private duty to provide or maintain streetlights in the area of the accident; that Glover did not have an action against Georgia Power where the privity of contract was between the City and Georgia Power; and that Georgia Power did not undertake any duty to Glover. The trial court further found that even if Georgia Power had breached some duty to Glover, the driver's intervening criminal act rendered the causal connection between any alleged negligence by Georgia Power and Glover's injuries too remote. Glover now appeals.

---

[2] Glover represents that she has since settled her lawsuit against the City. Glover also informs the Court that wrongful death lawsuits are pending against the City and Georgia Power on behalf of each of the deceased pedestrians.

1. As her first enumeration of error, Glover argues that the trial court erred in concluding that Georgia Power owed no duty to provide or maintain streetlights in the area of the incident. We discern no error on the part of the trial court.

> In order to have a viable negligence action, a plaintiff must satisfy the elements of the tort, namely, the existence of a duty on the part of the defendant, a breach of that duty, causation of the alleged injury, and damages resulting from the alleged breach of the duty. The threshold issue in any cause of action for negligence is whether, and to what extent, the defendant owes the plaintiff a duty of care. Whether a duty exists upon which liability can be based is a question of law. The duty can arise either from a valid legislative enactment, that is, by statute, or be imposed by a common law principle recognized in the case law.

(Citations and punctuation omitted.) *Diamond v. Dept. of Transp.*, 326 Ga. App. 189, 193-194 (2) (756 SE2d 277) (2014). "No matter how innocent the plaintiff may be, [s]he is not entitled to recover unless the defendant did something that it should not have done, or failed to do something that it should have done pursuant to the duty owed the plaintiff." (Citation and punctuation omitted.) *City of Douglasville v. Queen*, 270 Ga. 770, 771 (1) (514 SE2d 195) (1999).

Preliminarily, Glover is not claiming that Georgia Power owed her any statutory duty. Further, insofar as Glover is attempting to impose a duty on Georgia

6

Power through expert testimony, she cannot do so; again, the question of duty is a legal one. *Diamond*, supra, 326 Ga. App. at 195 (appellants' "efforts to establish a duty through expert testimony fail because what duty a defendant owes is a question of legal policy to be decided as an issue of law").

We therefore consider whether the precedential case law establishes any duty owed by Georgia Power. In *Tollison v. Georgia Power Co.*, 53 Ga. App. 795 (187 SE 181) (1936), a case similar to the present dispute, a plaintiff sued Georgia Power after being injured in a vehicle collision allegedly caused by a malfunctioning streetlight. The plaintiff alleged that Georgia Power was grossly negligent because its lighting system was "defective" and "unsafe" at an "unusually dangerous" point in a city street. Id. at 796. We held, however, that even assuming that Georgia Power's failure to maintain a light on this street was a proximate cause of the collision, Georgia Power was not liable to the plaintiff because there was "no privity of contract and no public or private duty owed to the plaintiff." Id. at 795.[3] See also *Dominic v. Eurocar*

_____

[3] Although Glover appears to challenge this longstanding precedent based on its age, and argues that it has been rendered obsolete by the Restatement (Second) of Torts, we note that it comports with more recent decisions of multiple jurisdictions. See *Blake v. Pub. Serv. Co. of New Mexico*, 82 P3d 960, 967-968 (N.M. Ct. App. 2003); *White v. Southern Cal. Edison Co.*, 30 Cal. Rptr. 2d 431, 437 (Cal. Ct. App. 1994); *Gin v. Yachanin*, 600 NE2d 836, 838 (Ohio Ct. App. 1991); *Turbe v. Govt. of Virgin Islands*, 938 F2d 427, 429-432 (II) (3d Cir. 1991); *Shafouk Nor El Din Hamza*

*Classics*, 310 Ga. App. 825, 830 (2) (714 SE2d 388) (2011) ("where privity of contract between the parties does not exist, to constitute a tort, the duty must arise independent of the contract.") (citation and punctuation omitted); *Martha Mills v. Moseley*, 50 Ga. App. 536, 537 (1) (179 SE 159) (1935) (water company was not liable in tort for failing to supply plaintiff with sufficient water to extinguish fire because there was "no public duty on the part of the company as to the resident"). In fact, this Court has never held that a utility company owes any duty to provide citizens with street lighting.[4]

In an attempt to establish a duty, Glover contends that Georgia Power, having undertaken to provide lighting in the area, is liable to her under Section 324A of the Restatement (Second) of Torts because the company failed to exercise reasonable care in designing or installing proper street lighting. We conclude, however, that none of the three subsections of Section 324A is applicable to this case.

---

*v. Bourgeois*, 493 So2d 112, 116-117 (La. Ct. App. 1986).

[4] Although "[a] power company is charged with the duty of exercising ordinary care in the construction and maintenance of its wires, poles, transformers and equipment," *McGarity v. Hart Elec. Membership Corp.*, 307 Ga. App. 739, 745 (2) (706 SE2d 676) (2011), Georgia Power's equipment did not cause Glover's injuries.

Section 324A, entitled "Liability to Third Person for Negligent Performance of Undertaking,"[5] states:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if (a) his failure to exercise reasonable care increases the risk of such harm, or (b) he has undertaken to perform a duty owed by the other to the third person, or (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

The first subsection, subsection (a), "applies only to the extent that the alleged negligence of the defendant exposes the injured person to a *greater risk of harm than had existed previously*." (Citation omitted; emphasis supplied.) *Herrington v. Gaulden*, 294 Ga. 285, 288 (751 SE2d 813) (2013). Thus, "the mere failure to abate a hazardous condition — without making it worse — does not trigger the application of Section 324A (a)." Id. There is no evidence that Georgia Power worsened the allegedly hazardous condition of the highway by either exacerbating an existing

---

[5] Georgia has "adopted [Section 324A] as an accurate statement of the common law." (Citations omitted.) *Herrington v. Gaulden*, 294 Ga. 285, 287 (751 SE2d 813) (2013).

hazard or creating a hazard where none had existed before. Thus, Section 324A (a) is inapplicable.

Glover's reliance on Section 324A (b) is similarly unavailing. This subsection only applies if the City owed Glover a duty, Georgia Power undertook to fulfill that same duty, and Georgia Power then failed to exercise reasonable care in the undertaking. That is not the case here.

Analyzing Glover's argument mandates an examination of the contours of the City's duty pertaining to the maintenance and lighting of its streets, so that we can determine whether Georgia Power undertook any such duty.[6]

> [T]he law is well settled in this State that a municipal corporation is bound to keep its streets and sidewalks in a reasonably safe condition for travel in the ordinary modes, by night as well as by day, and if it fails to do so, it is liable for damages for injuries sustained in consequence of such failure. But it is also undisputed that the decision whether to provide lighting on a particular city street is a discretionary function of a municipality. Such lighting is a discretionary act of the municipality,

---

[6] Georgia Power contends that Glover may not raise issues regarding the City's duty because these were resolved in the trial court's order granting the City's motion for partial summary judgment, and Glover did not appeal that order. However, in its brief supporting its summary judgment motion, Georgia Power argued that the physical condition of the roadway provided no basis to impose a duty on either the City or Georgia Power, and the trial court ruled on this issue in its order granting Georgia Power's motion.

and for the exercise or failure to exercise such a power no right of action accrues.

(Citations and punctuation omitted.) *Roquemore*, supra, 274 Ga. App. at 422.

As an initial matter, Highway 520 is part of the state highway system. There is no evidence in the record that the portion of the highway where the incident occurred is part of the City's street system for municipal purposes, and we question whether the City "agreed to perform the necessary maintenance" of this portion of the highway so as to incur liability that can be imputed to Georgia Power. See OCGA § 32-4-93 (b).

In any event, our Supreme Court has made clear that "[t]he keeping of a street in a condition reasonably safe for travel thereon has reference to its *physical condition.*" (Emphasis supplied.) *Town of Fort Oglethorpe v. Phillips*, 224 Ga. 834, 837 (165 SE2d 141) (1968). It follows, therefore, that "the mere absence of an ordinary street light at a given point will not constitute such negligence as to render the city liable if the city otherwise has performed its obligation to keep the streets safe and free from defects." (Citation omitted.) *Roquemore*, supra, 274 Ga. App. at 422. And, in the context of a municipality's duty to keep a street reasonably safe for travel, "[o]bstructions or defects in the streets . . . [mean] *physical* obstructions or defects."

11

(Emphasis supplied.) *Phillips*, supra, 224 Ga. at 836. Thus, "[i]n those cases in which it is held that after a city has undertaken voluntarily to light its streets, a failure to do so might furnish a ground of liability, it will be found that the facts involved *also* some defect, obstruction, or excavation in the street." (Emphasis supplied.) *Quinn v. Georgia Power Co.*, 51 Ga. App. 291, 293 (180 SE 246) (1935).

In this case, the roadway contained no physical defects or obstructions, nor was it being excavated in any manner. The fact that pedestrians often cross the highway does not bear on the issue of the highway's physical condition. See, e.g., *Phillips*, supra, 224 Ga. at 837 ("The manner in which a highway of a city is used is a different thing from its quality and condition as a street."); *Estate of Flygare v. Ogden City*, 405 P3d 970, 976 (II) (B) (Utah Ct. App. 2017) (neither the width of the street nor the volume of traffic constitutes a defect or unusual condition that would give rise to a duty to light the area).

Glover's continued assertion that the area was dark, however true that may be, also does not relate to the highway's physical condition; darkness is merely the natural condition of the nighttime, not a physical defect in a street. See *Roquemore*, supra, 274 Ga. App. at 422 ("[N]either the absence of lights nor defective lights is in itself negligence.") (citation and emphasis omitted); *Hayden v. Ward*, 283 AD2d 942,

12

943 (N.Y. 2001) ("allegation that the accident site was dark is insufficient to establish the existence of a duty to install street lighting on the Town") (citation and punctuation omitted). Indeed, if a municipality were required to provide lighting in every area that is naturally dark at night, regardless of the physical condition of the street, that obligation could effectively erode the municipality's discretionary power to provide the lighting in the first place. Essentially, there was nothing about the physicality of the highway itself that the City would have been duty-bound to rectify by installing and/or maintaining streetlights. Absent such a duty on the part of the City, we cannot hold that Georgia Power's installation and/or maintenance of streetlights on the roadway in question created any duty to Glover under Section 324A (b).

Further, there is no evidence that Georgia Power, of its own accord, assumed any specific duty toward Glover or the general public. This is not a case in which Georgia Power was informed of a malfunctioning light and then made a negligent repair. Compare *Rust Intl. Corp. v. Greystone Power Corp.*, 133 F3d 1378, 1381 (II) (11th Cir. 1998) (holding that, under Section 324A (b), the utility company voluntarily assumed a specific duty to restore power to a traffic signal, negligently

13

misdiagnosed the problem, and then failed to exercise reasonable care in making the repair).[7]

Although Glover cursorily mentions that the City relied on Georgia Power to properly design the lighting system, Section 324A (c) is also inapplicable here. The type of reliance contemplated by Section 324A (c) is explained in the following Comment to the Restatement: "Where the reliance of the other . . . has induced him to forgo other remedies or precautions against such a risk, the harm results from the negligence as fully as if the actor had created the risk." Restatement (Second) of Torts § 324A, Comment *e*. Glover has presented no evidence that the City was "induced to forego other remedies or precautions" in reliance on Georgia Power's design of the lighting system. Additionally, the City clearly did not rely on Georgia Power to repair the supposedly malfunctioning light because the City never reported this issue to Georgia Power, and Georgia Power did not attempt a repair. Compare *Rust Intl. Corp.*, supra, 133 F3d at 1381 (II) (Fulton County relied on utility company to restore power to traffic signal where it reported outage to the utility company and county was

---

[7] In fact, in *Rust Intl. Corp.*, the Eleventh Circuit Court of Appeals was careful to distinguish this Court's *Tollison* decision from instances in which a party assumes a *specific* duty toward third persons to whom it would not otherwise owe any duty. *Rust Intl. Corp.*, supra, 133 F3d at 1381 (II).

14

contractually prohibited from making the repair). We therefore conclude that Georgia Power is not liable to Glover pursuant to Section 324A (c) of the Restatement.

Lastly, we reject Glover's contention that this Court's recent decision in *City of Atlanta v. Kovalcik*, 329 Ga. App. 523 (765 SE2d 693) (2014), requires us to hold that Georgia Power owed Glover a duty. *Kovalcik* involved "the physical design" of a curb, in the form of a "concrete divider extending into the path of the regular turn lanes," and several "curb strikes" against that concrete divider. Id. at 526-527 (1). In that case, we addressed the municipality's liability and determined that an absence of lighting could be considered as evidence of whether, under the "unusual circumstances" of the case, the intersection was being maintained in a reasonably safe condition. Id. But *Kovalcik* does not apply here. Indeed, *Kovalcik* is more akin to a line of cases in which there was some *physical impediment* that was either in or a part of the roadway, and evidence regarding inadequate lighting bore on whether the street was being maintained in a reasonably safe condition. See *Barnum v. Martin*, 135 Ga. App. 712, 716 (219 SE2d 341) (1975) (road contained "sharp curve with reverse super-elevation" which forced cars off the road); *City of Dublin v. Howell*, 68 Ga. App. 463 (23 SE2d 177) (1942) (plaintiff stepped into "a hole or gully" in the street); *Hall v. City Council of Augusta*, 49 Ga. App. 77, 77-78 (3) (174 SE 172) (1934)

15

(plaintiff fell over a 6-inch metal pipe protruding from the sidewalk); *Williams v. Mayor & Council of Washington*, 142 Ga. 281, 285-286 (1) (82 SE 656) (1914) (city left "a deep cut in its street" so that the roadway was eight feet below the sidewalk).

This case involves no comparable physical issue with the highway. To the extent that the City may have requested the installation of streetlights in the area of the incident, this was a discretionary act, "and for the exercise or failure to exercise such a power no right of action accrues." *Roquemore*, supra, 274 Ga. App. at 422. Thus, even assuming an agency relationship between the City and Georgia Power, Glover could not maintain a viable negligence action against Georgia Power, and the trial court correctly granted summary judgment in Georgia Power's favor.

2. In light of our conclusion in Division 1, supra, we do not address Glover's remaining arguments challenging the trial court's grant of summary judgment to Georgia Power.

*Judgment affirmed. Brown and Goss, JJ., concur.*

16