S13G0577. HERRINGTON v. GAULDEN et al.
(751 SE2d 813)

BLACKWELL, Justice.

Deloris Gaulden experienced cardiac arrest, and she died in the emergency department of Liberty Regional Medical Center. Her daughter sued Bobby L. Herrington, M.D., the medical director of the emergency department, alleging that Gaulden could have been saved, if only her treating physician and nurse had promptly and properly implemented a chest pain protocol that the hospital had adopted.[1] The daughter alleged that Dr. Herrington owed a duty to supervise the training of the physician and nursing staff with respect to this protocol, but he negligently failed to ensure that they were adequately trained in that respect. The trial court awarded summary judgment to Dr. Herrington, but the Court of Appeals reversed, at least to the extent that the claim against him sounded in professional negligence.[2] *Gaulden v. Green*, 319 Ga. App. 84, 85 (733 SE2d 802) (2012). The Court of Appeals reasoned that Dr. Herrington assumed a

---

[1] Her daughter also sued her treating physician, her nurse, and others. This appeal, however, only concerns the claim against Dr. Herrington, and we decide nothing about the claims against the other defendants.

[2] The Court of Appeals held that the claim against Dr. Herrington properly sounded only in professional negligence, and to the extent that the plaintiff sought to assert a claim against

responsibility as medical director to supervise the training of emergency department physicians and nurses, and as a result, he owed a legal duty to Gaulden to see to it that their training was sufficient "to ensure that the physicians and nurses were adequately informed of and knowledgeable about [hospital policies, including the chest pain protocol]." *Gaulden*, 319 Ga. App. at 90 (1). We issued a writ of certiorari to review that decision, and we now reverse the judgment of the Court of Appeals.

To make out a case of medical malpractice, the plaintiff usually must prove that she was, in fact, a patient of the defendant-physician. See *Bradley Center v. Wessner*, 250 Ga. 199, 201 (296 SE2d 693) (1982) (in "classic medical malpractice actions," "doctor-patient privity is essential because it is this relation which exists between physician and patient which is a result of a consensual transaction that establishes the legal duty to conform to a standard of conduct" (Citation and punctuation omitted)). See also *Rindsberg v. Neacsu*, 317 Ga. App. 269, 272 (730 SE2d 525) (2012); *Schrader v. Kohout*, 239 Ga. App. 134, 136-137 (522 SE2d 19) (1999). In this case, of course, it is undisputed that Dr. Herrington did not treat Gaulden. But the usual rule has a few recognized exceptions, and in this case, the Court of Appeals found such an exception, relying upon its own decision in *Gray v. Vaughn*, 217 Ga. App. 872 (460 SE2d 86) (1995), as well as Restatement (Second) of Torts § 324A (a). We conclude, however, that neither *Gray* nor Section 324A (a) properly applies in this case.

In *Gray*, a young boy presented in a hospital emergency room with certain symptoms, but his treating physician failed to diagnose spinal meningitis as the cause of those symptoms. The failure of the physician to properly diagnose the condition of the boy arguably was, at least in part, a consequence of the failure of the hospital nursing staff to properly document his medical history. The parents of the boy sued a professional corporation that had contracted with the hospital to, among other things, supervise the hospital nursing staff. Pointing specifically to the provision of the contract in which the professional corporation agreed to "be responsible for determining the manner and method in which [the nursing staff] assist [emergency physicians] in the diagnosis and treatment of illness or injury," the Court of Appeals held that the corporation owed a duty to the boy to supervise the provision of nursing care in the emergency room. 217 Ga. App. at 873-874 (1). In this case, the Court of Appeals understood

---

Dr. Herrington for ordinary negligence, the Court of Appeals concluded that summary judgment for Dr. Herrington was warranted. In this opinion, we only consider professional negligence, and we decide nothing about ordinary negligence. We leave undisturbed the opinion of the Court of Appeals as to ordinary negligence.

*Gray* broadly to stand for the proposition that "the failure to adequately supervise emergency room staff can result in liability for any damages resulting from such failure by one whose responsibility it is to provide such supervision." *Gaulden*, 319 Ga. App. at 87 (1) (punctuation omitted). But any precedential decision must be read in the light of the facts presented in that case, see *Thomas County Bd. of Tax Assessors v. Thomasville Garden Center*, 277 Ga. App. 591, 592 (1) (627 SE2d 192) (2006), and in *Gray*, the defendant-professional corporation undertook not only to supervise the nursing staff, but also to direct the method and manner of care rendered by the nursing staff, a circumstance that the *Gray* court explicitly noted. *Gray*, 217 Ga. App. at 873-874 (1). Unlike the professional corporation in *Gray*, Dr. Herrington had no responsibility or authority as medical director to control or direct "the manner and method" of care rendered to Gaulden by her treating physician and nurse.[3] *Gray* simply has no application here.

About Section 324A, our Court has adopted it as an accurate statement of the common law. *Huggins v. Aetna Casualty & Surety Co.*, 245 Ga. 248, 249 (264 SE2d 191) (1980). See also *Argonaut Ins. Co. v. Clark*, 154 Ga. App. 183, 184-185 (2) (267 SE2d 797) (1980). Under Section 324A,

> [o]ne who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if (a) his failure to exercise reasonable care increases the risk of such harm, or (b) he has undertaken to perform a duty owed by the other to the third person, or (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

*Huggins*, 245 Ga. at 249 (citation and punctuation omitted). In this case, the Court of Appeals pointed to Section 324A (a), and it reasoned that,

> [b]y agreeing to take on specific supervisory responsibilities over the emergency room staff with respect to their training,

---

[3] In fact, in its contract with the treating physician, the company that provided physician staffing at Liberty Regional – and the company for which Dr. Herrington was to supervise the physician staff – explicitly disavowed "any control or direction over the methods by which [the treating] [p]hysician shall perform his/her professional work and duties while on duty."

Dr. Herrington undertook to render services which he should have recognized as necessary for the protection of emergency room patients. Moreover, the alleged failure to exercise reasonable care in rendering those services would increase the risk of harm to emergency room patients, given that the failure to have physicians and nurses properly trained on hospital protocols and standing orders would increase the risk to patients of receiving negligent medical care.

*Gaulden*, 319 Ga. App. at 91 (1). This reasoning, we think, is unsound in an important respect.

As our Court of Appeals previously has explained, Section 324A (a) applies only to the extent that the alleged negligence of the defendant "exposes the injured person to a greater risk of harm than had existed previously." *Taylor v. AmericasMart Real Estate*, 287 Ga. App. 555, 559 (1) (b) (651 SE2d 754) (2007) (punctuation and footnote omitted). Accordingly, Section 324A (a) "applies when a nonhazardous condition is made hazardous through the negligence of a person who changed its condition or caused it to be changed. . . . Liability . . . does not attach for failing to decrease the risk of harm." *BP Exploration & Oil v. Jones*, 252 Ga. App. 824, 830 (2) (a) (558 SE2d 398) (2001) (punctuation and footnote omitted). Put another way, the mere failure to abate a hazardous condition — without making it worse — does not trigger the application of Section 324A (a). See id. In this case, we find no evidence in the record that the risk to Gaulden was "escalated," see id., by the alleged failure of Dr. Herrington to adequately supervise the training of emergency department physicians and staff. At most, Dr. Herrington might be said to have failed to resolve a misunderstanding of the physicians and staff about the precise requirements of the chest pain protocol, a misunderstanding that no evidence suggests was of his own making. As such, there is no evidence that he affirmatively increased the risk of harm to patients such as Gaulden, and Section 324A (a) does not apply.

The decision of the Court of Appeals rests entirely upon its application of the principles of law set forth in *Gray* and Section 324A (a). Neither principle properly applies in this case. Accordingly, the judgment of the Court of Appeals is reversed.

*Judgment reversed. All the Justices concur.*

DECIDED NOVEMBER 25, 2013.

*Coles Barton, Matthew S. Coles, Alston & Bird, James C. Grant, Louis B. Park, Matthew L. J. D. Dowell, Commander Pound Butler,*

Theodore E. G. Pound, Kathleen W. Simcoe, Brennan & Wasden, Wiley A. Wasden III, B. Nicole Smith, Weathington Smith, Paul E. Weathington, for appellant.

Arnold & Stafford, Jeffery L. Arnold, H. Craig Stafford, Andrew S. Johnson, for appellees.

Robbins, Ross, Alloy, Belinfante & Littlefield, Joshua B. Belinfante, Carlock, Copeland & Stair, Eric J. Frisch, Donald J. Palmisano, Jr., amici curiae.