**SECOND DIVISION**
**MILLER, P. J.,**
**ANDREWS and BROWN, JJ.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**July 31, 2018**

# In the Court of Appeals of Georgia
A18A1140. BOYD v. BIG LOTS STORES, INC.

ANDREWS, Judge.

Regina Boyd was an invitee at a store leased and occupied byBig Lots Stores, Inc., which was located in a shopping center with a common area parking lot owned by the shopping center owner/lessor. After Boyd left the Big Lots store, she was injured when she slipped and fell in the parking lot while walking to her car. Boyd sued Big Lots claiming that her injury was proximately caused by the negligent failure of Big Lots: (1) to discharge the duty imposed on it by OCGA § 51-3-1 to keep the store premises and approaches safe for invitees; or (2) to discharge a duty it voluntarily assumed pursuant to Restatement (Second) of Torts § 324A to protect its invitees from the dangerous condition in the parking lot of which it had notice.

Boyd appeals from the trial court's grant of summary judgment in favor of Big Lots on these claims, and for the reasons that follow, we affirm.

1. Under OCGA § 51-3-1, Big Lots owed a duty to its invitees to exercise ordinary care to keep the store premises, and the approaches to the premises, "in a reasonably safe condition." *Robinson v. Kroger Co.*, 268 Ga. 735, 740 (493 SE2d 403) (1997). After shopping at the store, Boyd left the store premises, walked away from the store across a sidewalk in front of the store, and then continued walking away from the store toward her car into the shopping center's parking lot where she slipped and fell in a liquid substance on the surface of the parking lot about 45 feet from the store entrance. The shopping center parking lot was a common area owned and maintained by the shopping center owner/lessor or its assignee. The undisputed facts show that Boyd was not on the Big Lots store premises when she slipped and fell in the common area parking lot, and the trial court correctly concluded that the parking lot was not an approach to the store premises within the meaning of OCGA § 51-3-1.

Under *Motel Properties, Inc. v. Miller*, 263 Ga. 484, 486 (436 SE2d 196) (1993), an approach to the premises for the purpose of OCGA § 51-3-1 means

> that property directly contiguous, adjacent to, and touching those entrywaystopremisesunder the controlof anowner or occupier of land, through which the owner or occupier, by express or implied invitation, has induced or led others to come upon his premises for any lawful purpose, and through which such owner or occupier could foresee a reasonable invitee would find it necessary or convenient to traverse while entering or exiting in the course of the business for which the invitationwasextended. By"contiguous,adjacentto, andtouching," we mean that property within the last few steps taken by invitees, as opposed to "mere pedestrians," as they enter or exit the premises. It is onlywithinthe confinesof thislimitedapproachthat[a dutyisimposed] ona landowner [or occupier]toexercise ordinarycare over propertynot within the landowner's [or occupier's] control.

The extent of an approach to the premises under this definition "necessarilydepends

3

uponthe circumstances of a particular case –i.e., whatconstitutesthe 'lastfew steps' on foot is necessarily a lesser measure of proximity to the premises that the last few steps taken in the context of a faster moving automobile." *Combs v. Atlanta Auto Auction, Inc.*, 287 Ga. App. 9, 15 (650 SE2d 709) (2007). Under the circumstances of thiscase, we findthat, after Boyddepartedonfootfromthe store premises, walked across a sidewalk in front of the store, and continued walking away from the store into the common area parking lot to a point 45 feet from the store, she was no longer ona contiguous approach to the store premiseswhenshe slippedandfell. *FoodLion, Inc. v. Isaac*, 261 Ga. App. 311, 312-313 (582 SE2d 476) (2003).

Moreover, the trial court correctly found that there was no basis in the record toconclude thatthe non-contiguousparkinglotwhere Boydslippedandfellqualified for the exception recognized in *Motel Properties*, supra, where "under certain circumstances non-contiguous property can be deemed an approach because the landowner [or occupier] extended the approach to his premises by some *positive action* on his part, such as constructing a sidewalk, ramp, or other *direct* approach." *Motel Properties*, 263 Ga. at486(citation and punctuation omitted). Big Lots had no responsibilitytomaintain the shoppingcenter parkinglot, which was a commonarea

4

owned and maintained by the shopping center owner/lessor. However, the record shows that, shortly after Boyd fell in the parking lot and was transported by an ambulance, the Big Lots store manager became aware of the fall and put down some "spillmagic" (a substance usedbyBigLots toabsorb spillsinthe store) over the spot inthe parkinglotwhere Boydfell. The store manager saidthat, althoughthe shopping center owner/lessor was responsible for keeping the parking lot safe, "my personal belief or practice wouldbe if there'ssomethingthatneedsto be handledimmediately that I can handle such as trash in the parking lot or an area that may need to be roped off if there's something wrong with it, we would take care of that ourselves temporarily until someone could get there . . . [b]ut the parking lot has always been handled by the landlord." A Big Lots store employee deposed that, if she was informed about a dangerous condition in the parking lot, her "personal practice" and "common sense" would be to report it and then do something about it to prevent an injury, but she said that was not required by Big Lots policy. And another Big Lots store employee said that, if she got notice that there was a dangerous condition in the parking lot, it was Big Lots policy for her to notify the store management. This evidence was not sufficient to show that Big Lots extended the approach to its store over the non-contiguous parking lot. Before finding that an owner or occupier has extended

5

an approach to the premises over a non-contiguous property, "the requirement of an act reflecting a landowner's [or occupier's] positive exercise of dominion over . . . another's property is necessary in order to avoid imposing upon invitors an unknowable and impossible burden for maintaining an undefined circumference of properties." Id. at 486 (citation and punctuation omitted). There was no evidence sufficient to establish that Big Lots took any action reflecting a positive exercise of dominion over the common area parking lot.

Boyd also contends that Big Lots had a duty under OCGA § 51-3-1 to take steps to protect her from the hazardous condition in the parking lot, even if the parking lot was not part of the store premises or approaches. Boyd points to evidence that Big Lots knew its store invitees used the parking lot to enter and leave the store and knew that hazardous conditions could arise in the parking lot. And evidence showed that about 60 to 70 seconds before Boyd slipped and fell in the parking lot, another Big Lots shopper, who had just walked into the store from the parking lot, told a Big Lots employee that there was a slippery substance in the parking lot that he had just slipped on and that needed to be cleaned up. Citing to *Martin v. Six Flags Over Georgia II, L.P.*, 301 Ga. 323 (801 SE2d 24) (2017), Boyd contends that, because harm to store invitees due to hazards in the parking lot was foreseeable to

6

Big Lots, OCGA § 51-3-1 imposed a duty on Big Lots to take reasonable steps protect its invitees from those hazards.

In *Martin*, the Supreme Court considered whether Six Flags could be held liable under OCGA § 51-3-1 for injuries incurred by a Six Flags invitee resulting from a third party criminal attack which occurred a short distance off the Six Flags premisesandapproachesshortlyafter the invitee haddepartedfromSixFlags. *Martin* found that Six Flags had a duty under OCGA § 51-3-1 to exercise ordinary care to keep its premises and approaches safe to protect its invitee from the attack which subsequentlyoccurred off the premises and approaches. *Martin*, 301 Ga. at 328-332. *Martin* recognized Six Flags' liability for breach of the duty on the basis that, althoughthe physicalattackoccurredoff the premisesandapproaches, the attackwas conceived and executed in part while the attackers and the invitee were on the Six Flags premises, and the attack was reasonably foreseeable to Six Flags. Id. at 328332. Astowhether breach of the dutywas a proximate cause of the injuries sustained by the invitee in the attack occurring off the premises and approaches, *Martin* declined to grant certiorari to address that issue, but noted that the Court of Appeals considered the jury verdict in favor of Six Flags and affirmed the jury's finding of proximate cause in *Six Flags Over Georgia II, L.P. v. Martin*, 335 Ga. App. 350 (780 SE2d 796)

7

(2015), reversed in part by *Martin*, 301 Ga. 323 (2017). *Martin*, 301 Ga. at 332 n.6.

Although *Martin* found that the Court of Appeals opinion erroneously concludedthat

the physical attack occurred on an approach to the Six Flags premises (where Six

Flags had a duty of care under OCGA § 51-3-1), *Martin* "nonetheless agree[d] with

the Court [of Appeals] that the jury could find that Six Flags breached its duty to

exercise ordinary care in keeping its own premises safe and that its breach wasthe

proximate cause of the injuriesMartinsustained[inthe physicalattack]atthe CCT

busstop." Id. at336-337.[1]Thus,the impositionof liabilityin*Martin*for injuries caused

by the physical attack off the premises and approaches was based on breach of the

owner/occupier's duty under OCGA § 51-3-1 to exercise ordinary care to maintain

safety and security within its premises and approaches (while the invitee was in those

---

[1]
    The proximate cause issue addressed by the Court of Appeals opinion was whether Six Flags'breach of the dutyunder OCGA § 51-3-1 to keep its premises and approaches safe was a proximate cause of injuries resulting from the attack that the Court erroneously concluded occurred on an approach to the premises where Six Flags exercised control and had a duty to keep the approach safe. *Six Flags Over Georgia*, 335 Ga. App. at 353-363. The proximate cause issue raised (but not discussed) in the Supreme Court's *Martin* opinion was whether Six Flags' breach of the duty under OCGA § 51-3-1 to keep its premises and approaches safe was a proximate cause of injuries resulting from the attack that *Martin* found occurred at a location off the premises and approaches where Six Flags had no control and no duty of care under OCGA § 51-3-1. *Martin*, 301 Ga. at 333-337.

areas) to protect the invitee from dangerous conditions under which the attack was conceived and partially executed on the premises. *Martin*, 301 Ga. at 329

330. "[L]iability may arise from a breach of that duty [under OCGA § 51-3-1] that proximately causes injuries even if the resulting injury ultimately is completed beyond that territorial sphere." Id. at 330; see *Wilkes v. Piggly Wiggly Southern, Inc.*,

207 Ga. App. 842 (429 SE2d 322) (1993).

Unlike *Martin*, the only dangerous condition which caused Boyd's slip and fall was the static slippery condition in the parking lot, a common area owned and maintained by the shopping center owner/lessor, which was not part of the Big Lots store premises or approaches. There was no evidence of any dangerous condition existing on the Big Lots store premises or approaches. Accordingly, there was no basis to conclude that, while Boyd was on the Big Lots store premises or approaches, Big Lots breached a duty of care under OCGA § 51-3-1 to keep those areas safe that was a proximate cause of Boyd's subsequent slip and fall in the parking lot. It follows that the rationale adopted in *Martin*, supra, for imposing liability under OCGA § 513-1 for injuries incurred by a former invitee off the premises and approaches has no application in the present case. The trial court correctly granted summary judgment in favor of Big Lots on Boyd's claim under OCGA § 51-3-1. OCGA § 9-11-56.

9

2. The trial court correctly found there was no basis for Boyd's claim that Big Lots breached a duty it voluntarily assumed pursuant to Restatement (Second) of Torts § 324A to protect her from the dangerous condition in the parking lot.

As set forth above, Boyd points to evidence: (1) that, about 60 to 70 seconds before she slipped and fell in the parking lot, a Big Lots store employee was warned by another invitee that there was a dangerous slippery condition in the parking lot, and (2) that, if Big Lots store employees received notice of a dangerous condition in the parking lot, they would sometimes respond by voluntarily undertaking to temporarily address the danger until the owner/lessee could respond.

> Under Section 324A,
> [o]ne who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if (a) his failure to exercise reasonable care increasesthe riskof suchharm, or (b) he hasundertaken to perform a duty owed by the other to the third person, or (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

Section 324A has been adopted in Georgia as an accurate statement of the common

law. *Herrington v. Gaulden*, 294 Ga. 285, 287 (751 SE2d 813) (2013). None of the conditions for liability set forth in Section 324A apply in the present case.

10

As to Section 324A (a), this subsection

> applies only to the extent that the alleged negligence of the defendant exposes the injured person to a greater risk of harm than had existed previously. Accordingly,Section 324A(a)applieswhena nonhazardous condition is made hazardous through the negligence of a person who changed its condition or caused it to be changed. Liability does not attach for failing todecrease the risk of harm. Put another way, the mere failure to abate a hazardous condition – without making it worse – does not trigger the application of Section 324A (a).

*Herrington*, 294 Ga. at 288. (citations and punctuation omitted). Even if there was evidence thatBigLotshad notice of the dangerous condition 60to70secondsbefore Boyd slipped and fell, and would sometimes undertake to remove that kind of condition to prevent injury, the mere failure to abate the hazardous condition did not make it worse and did not trigger the application of Section 324A (a)

Under Section 324A (b), Boyd points to evidence showing that Big Lots sometimes undertook a dutyowed bythe shopping center owner/lessor to invitees to keep the parking lot in a safe condition. But even if Big Lots got notice of the hazard 60 to 70 seconds before the Boyd slipped and fell, there is no evidence that, during that brief period, Big Lots undertook to perform a duty owed by the shopping center owner/lessor to Boyd. And subsection (b) only applies where performance is to be substitutedcompletelyfor thatof the partyonwhose behalfthe undertakingiscarried out. *Fair v. CV Underground, LLC*, 340 Ga. App. 790, 796 (798 SE2d 358) (2017); *Huggins v. Standard Fire Ins. Co.*, 166 Ga. App. 441, 442 (304 SE2d 397) (1983).

We find no evidence that Big Lots completely took over the responsibility of the owner/lessor tomaintainthe parkinglot. There wasnobasisfor imposition of liability under Section 324A (b).

Finally, to impose liability under Section 324A (c) required a showing that Boyd suffered the slip and fall injuries because of actual reliance by her or the shopping center owner/lessor on an undertaking by Big Lots to remedy the parking lot hazard. Even if Big Lots had notice of the slippery condition in the parking lot 60 to 70 seconds before the slip and fall, there was no basis to conclude that Boyd or the shopping center owner/lessor relied on any undertaking by Big Lots to remedy the hazard.

The trial court correctly granted summary judgment to Big Lots on Boyd's claims based on Section 324A. OCGA § 9-11-56.

*Judgment affirmed. Miller, P. J., and Brown, J J., concur*.