[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DEC 21, 2010
JOHN LEY
CLERK

No. 10-12448
Non-Argument Calendar

_____

D.C. Docket No. 4:07-cv-00217-HLM

MICHAEL LOCKMAN,

                                        Plaintiff - Appellant,

versus

S.R. SMITH, LLC,
S.R. SMITH, INC.,
ASSOCIATION OF POOL & SPA PROFESSIONALS,
f.k.a. National Spa & Pool Institute,

                                        Defendants - Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(December 21, 2010)

Before MARCUS, PRYOR and ANDERSON, Circuit Judges.

PER CURIAM:

Michael Lockman appeals the summary judgment in favor of S.R. Smith, LLC, and S.R. Smith, Inc. (collectively "Smith"), and the Association of Pool and Spa Professionals. In 2003, Lockman damaged his spinal cord diving into his parents' swimming pool. Lockman blamed his injuries on the alleged defects in, and inadequate warning labels on, a diving board manufactured by S.R. Smith and on the alleged flaws in standards the Association recommended that contractors use to install residential swimming pools. Lockman sought to introduce expert testimony about the efficacy of warning labels, but the district court excluded the testimony as inadmissible under Federal Rule of Evidence 702 and Daubert v. Merrill Dow Pharmaceutical, Inc., 509 U.S. 579, 113 S. Ct. 2786 (1993). The district court ruled that there was no evidence that either Smith or the Association had violated a duty owed to Lockman. We affirm.

Lockman argues that the district court abused its discretion when it excluded the expert testimony of Dr. Ross Buck about the sufficiency of the warning label on the diving board, but we disagree. Lockman failed to establish that Buck was qualified to offer expert testimony or that his testimony was reliable. Buck lacked the education, knowledge, or experience to qualify as an expert on the subject-matter of warning labels. See United States v. Brown, 415 F.3d 1257, 1269 (11th Cir. 2005). Buck is a psychologist who is an expert in "the

2

brain's responses to a person expressing emotion" and has not researched or performed any studies about warning labels and their effect on persons using diving boards. Buck's testimony also was not based on a reliable methodology. See Kilpatrick v. Breg, Inc., 613 F.3d 1329, 1335–36 (11th Cir. 2010). Buck based his opinion about what constitutes an "effective warning" on general principles of psychology, and he failed to cite any tests or studies to support his theory that a warning label must evoke "emotion" to be effective. Buck's methodology has not been tested or subjected to peer review. The district court did not abuse its discretion by excluding Buck's testimony.

The record establishes that Lockman was familiar with his parents' pool and the dangers of diving boards so that any failure to warn was not the proximate cause of his injury. See Murphy v. D'Youville, 175 Ga. App. 156, 156–57, 333 S.E.2d 1, 2–3 (1985). Under Georgia law, "there is no duty on the seller to warn the user or consumer of a . . . danger that [he] should recognize." Boyce v. Gregory Poole Equip. Co., 269 Ga. App. 891, 895, 605 S.E.2d 384, 388 (2004). Lockman testified that he was 28 years old at the time of the incident and an experienced swimmer; he knew of people who had struck their head after diving from a board into a swimming pool; he had observed warnings, including one on his parents' diving board, to enter the water with arms extended and to "steer up" a

3

dive; he was familiar with his parents' pool, its depth, and the transition wall that he struck; and he had dived into his parents' pool on numerous occasions without incident.

The record also establishes that Smith is not strictly liable for a design defect. To prevail in an action based on strict liability, a plaintiff must prove that the "condition [of the product] when sold is the proximate cause of his injury." Ga. Code Ann. § 51-1-11(b)(1). Lockman argued that he was injured because Smith's diving board was marketed for, but could not be used safely on, a Type II swimming pool, but the Lockman swimming pool did not meet the specifications for a Type II pool. Smith has the "absolute right to have [its] strict liability for injuries adjudged on the basis of [its] design," Talley v. City Tank Corp., 158 Ga. App. 130, 135, 279 S.E.2d 264, 269 (1981), not on the design of the Lockman swimming pool.

Lockman contends that the Association assumed gratuitously a duty to warn consumers about the danger of swimming pools and diving boards covered by its standards, but we disagree. Under the good samaritan doctrine, a defendant can be liable for performing negligently services intended to protect a third person or his property. Huggins v. Aetna Cas. & Sur. Co., 245 Ga. 248, 248, 264 S.E.2d 191, 192 (1980) (adopting section 324A of the Restatement (Second) of Torts). To be

liable, the defendant must have either: (1) "fail[ed] to exercise reasonable care" and "increase[d] the risk of . . . harm" to the third party; (2) "undertaken to perform a duty owed by [another party] to the third person"; or (3) "the harm is suffered because of reliance of [another party] or the third person upon the undertaking." Id. (internal quotation marks omitted).

Lockman failed to satisfy any of the three requirements that would make the Association liable under the good samaritan doctrine. First, Lockman argues the Association had a duty to disseminate to the public the results of a study suggesting that tall, athletic men could be injured by diving into specific residential in-ground pools, but the Association cannot be held liable for failing to decrease an existing risk of harm. See Dale v. Keith Built Homes, Inc., 275 Ga. App. 218, 220, 620 S.E.2d 455, 457 (2005) ("[F]ailing to take all possible actions to prevent an occurrence is not the same as increasing the risk of the occurrence."); BP Exploration & Oil, Inc. v. Jones, 252 Ga. App. 824, 830, 558 S.E.2d 398, 405 (2001) ("Liability . . . does not attach for failing to decrease the risk of harm."). Second, Lockman argues that the Association "completely undertook responsibility for design standards for residential swimming pools," but there is no evidence that manufacturers of residential pool equipment relied entirely on the standards promulgated by the Association. The record instead

5

establishes that Smith developed and issued its own warnings and the Consumer Products Safety Commission performed tests to determine the danger of diving boards.  Third, Lockman argues that "a reasonable inference" could be made that either Smith, the contractor who built the pool, or the unknown manufacturer of the pool liner relied on the standards issued by the Association, but "[s]ection 324A(c) 'requires proof of actual reliance.'"  BP Exploration & Oil, 252 Ga. App. at 831, 558 S.E.2d at 406.

We **AFFIRM** the summary judgment in favor of Smith and the Association.